400 So.2d 559 (1981)
NATIONWIDE FINANCIAL CORPORATION OF COLORADO, Appellant,
v.
Jack K. THOMPSON, Beverly P. Thompson, Individually, Kester E. Thompson, Heather L. Thompson, George K. Thompson and Dale Carson, As Sheriff of Duval County, Florida, Appellees.
No. YY-8.
District Court of Appeal of Florida, First District.
July 7, 1981.
*560 Albert H. Mickler, Jacksonville, for appellant.
Walter F. Rogers, Jr., Eugene F. Murphy, William Lee Allen, Jacksonville, for appellees.
JOANOS, Judge.
This appeal results from the trial court's dismissal of a complaint filed by Nationwide Financial Corporation ("Nationwide") seeking to enforce a lien against an undivided one-half interest in real property formerly held by Jack Thompson. The trial court found that the real property involved was protected from attachment of a lien by the homestead exemption provision of Article X, Section 4, Florida Constitution. We agree with Nationwide that dismissal of its complaint was inappropriate and remand this case for further proceedings consistent with this opinion.
As set forth in the complaint, Jack and Beverly Thompson were husband and wife and each owned an undivided one-half interest in their marital residence. Jack and Beverly separated, however, with Jack moving into an apartment while Beverly and their three children remained in the house. During this period of separation, Nationwide obtained and recorded a personal judgment against Jack. About one week after the judgment was recorded, Jack and Beverly's marriage was dissolved, and the final judgment of dissolution ordered Jack to convey his half interest in the marital residence to his children Kevin (a minor), Heather, and Kester. Beverly was given custody of Kevin, the minor child, as well as exclusive use and possession of the marital residence; Jack was ordered to pay child support for Kevin.
In compliance with the final judgment, on November 14, 1979, Jack conveyed his interest in the property to his three children. Five days after this conveyance, Nationwide instructed the Sheriff to levy on Jack's one-half interest. Jack filed an affidavit of homestead exemption claiming his one-half interest in the property to be exempt, but the interest was sold to Nationwide in a Sheriff's sale on January 30, 1979. When the Sheriff refused to deliver the deed, Nationwide then filed a complaint seeking a determination of the homestead status of the property and requesting that its title to its interest in the property be quieted.[1] Both of these counts were dismissed by the trial judge on the ground that Nationwide has no interest in the property due to its homestead status at the time of the judgment lien.
Nationwide argues that its lien attached to the property when it ceased to become homestead property. This occurred, according to Nationwide, either when Jack "abandoned" the property by moving into an apartment or when he conveyed the property to his children. In addition, Nationwide argues that the trial court could not make a determination that Jack was "head of a family" (a requirement for homestead exemption) on a motion to dismiss because that issue required a factual determination. Although we reject Nationwide's first contention, we do agree that further evidence is necessary in order to make a proper determination of the validity of Nationwide's lien.
Article X, § 4(a) of the Florida Constitution provides, in pertinent part:
There shall be exempt from forced sale ..., and no judgment, decree or execution shall be a lien thereon... the following property owned by the head of a family: (1) a homestead ... upon which the exemption shall be limited to the residence of the owner or his family.
*561 This provision results in a two-part test for homestead exemption on a particular piece of property. First, the property must be the residence of either the owner or the owner's family. Second, the owner of the property must be the "head of a family."
Concerning Nationwide's contention that Jack "abandoned" the property, the Florida Constitution does not require that the owner claiming homestead exemption reside on the property; it is sufficient that the owner's family reside on the property. See Vandiver v. Vincent, 139 So.2d 704 (Fla. 2d DCA 1962). During the period of time that Jack retained his ownership interest in the property, his wife and minor child still occupied the residence. In order to support a claim of abandonment it must be shown that both the owner and the owner's family abandoned the property.
We also reject the argument that Nationwide's lien attached when the property was transferred to Jack's children pursuant to the final judgment of dissolution. The material time for determining the priority of a lien over a claim of homestead exemption is the time the lien would have attached if homestead exemption were not applicable. Bessemer Properties, Inc. v. Gamble, 27 So.2d 832 (Fla. 1946). See also 16 Fla.Jur. Homesteads § 41; Maines & Maines, Our Legal Chameleon Revisited: Florida's Homestead Exemption, 30 U.Fla. L.Rev. 227 (1978). In this case, the validity of the homestead claim must be evaluated with regard to the period of time that Nationwide's judgment was entered and recorded. If the property had attained its homestead status before this period of time, a subsequent sale of the homestead will not give effect to the attempted lien. As the court points out in Volpitta v. Fields, 369 So.2d 367, 369 (Fla. 4th DCA 1979); cert. denied, 379 So.2d 204 (Fla. 1979), "[c]reditors have no right to complain of dealings with property which the law does not allow them to apply to their claims." See also Bessemer Properties, Inc., supra. Therefore, if there was no lien against Jack's interest as long as he owned the property, there is no basis for enforcing a lien against the Thompson children.[2]
Having resolved that the allegations of the complaint were that Jack owned an undivided one-half interest in property which served as his family's residence, it is still necessary to determine whether Jack was the "head of a family" in order for the homestead exemption to apply. We cannot assume that he was the "head of the family." It is a factual question. The courts have long held that under the Florida constitution there can be only one head of a family. Solomon v. Davis, 100 So.2d 177 (Fla. 1958); Anderson v. Garber, 183 So.2d 693 (Fla. 3d DCA), cert. denied, 188 So.2d 820 (Fla. 1966). Since the homestead exemption for the "head of a family" has been a part of the constitution, however, separate living arrangements, dissolutions and single parentage have become a much more frequent occurrence. It is common for more than one member of the family to provide family income. When the "family" is not a cohesive unit or when only one parent provides the income, it is no easy task to determine who is the "head" of the family, and the courts have been reluctant to adhere to any hard and fast rule in making that determination. See, e.g., Osceola Fertilizer v. Sauls, 98 Fla. 339, 123 So. 780 (1929); Barnett Bank of Cocoa v. Osborne, 349 So.2d 223 (Fla. 4th DCA 1977); Estate of Deem v. Shinn, 297 So.2d 611 (Fla. 4th DCA 1974); Vandiver v. Vincent, 139 So.2d 704 (Fla.2d DCA 1962). As the divergent results[3] of the above-cited cases point out, because each case must be resolved on its own facts and circumstances *562 the issue of who is the family head is inappropriate for disposition on a motion to dismiss. Cory v. Parks, 386 So.2d 292 (Fla. 2d DCA 1980).
Before receiving further evidence on the issue of whether Jack was the head of the family, for practical reasons of judicial efficiency the trial judge may first allow proof of the nature of the property interest involved in this case. The complaint alleged that Jack and his wife each owned an undivided one-half interest in the residence, but did not state whether the property was held as tenants in common or as tenants by the entireties. If the latter form of ownership is proven, Nationwide's lien should fail not on the basis of homestead exemption, but because that form of property ownership precludes the attachment of liens which are not the joint obligation of both husband and wife. Murray v. Sullivan, 376 So.2d 886 (Fla. 1st DCA 1979). Thus, if the court finds that prior to the dissolution the property was held as tenants by the entireties, it will become unnecessary to determine the homestead status of the property.
REVERSED and REMANDED for further consideration consistent with this opinion.
MILLS and SHAW, JJ., concur.
NOTES
[1] Nationwide does not argue that it is presently entitled to partition or possession of the property and has conceded that its lien is subordinate to Beverly's interest as well as her court awarded possession of the property. Plaintiffs Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Record on Appeal, p. 18; Appellant's Reply Brief, p. 2.
[2] Although appellant has argued, that the lien could have attached during the "gap" between the dissolution judgment ordering Jack to convey his property and the actual delivery of the deed, we deem the judgment of dissolution to control the transfer of the property. See, e.g., Liberman v. Kelso, 354 So.2d 137 (Fla. 2d DCA 1978). For purposes of determining if or when Jack's interest lost its homestead status, therefore the court should consider only the period prior to the dissolution judgment.
[3] Although the cases in this area seem to be incompatible, the trial judge faced with making a finding on who is the family head may take some solace in the knowledge that a common thread can be found running through each case: the homestead law should be construed liberally for the benefit of those whom it was designed to protect. See Vandiver v. Vincent, 139 So.2d 704, 707-708 (Fla. 2d DCA 1962).